HAWKEYE PETROLEUM CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30303. Promulgated September 30, 1952.

*Howard A. Steele, Esq.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

1224

1225

## OPINION.

Opper, *Judge:* Although the taxes in controversy relate to 1943 and the claimed carry-back of a loss to that year is from 1945, the real question concerns petitioner's conduct in 1944. The parties are fundamentally at odds as to whether what petitioner did in that year constituted an irrevocable election not to expense its intangible drilling and development costs.

1944 was the first year after the end of the effective date of adoption of Regulations 111, section 29.23 (m)–16 (*b*), granting a new election to oil producers,[1] in which petitioner had any development costs. The regulation in question, after requiring a "clear statement" of the operator's choice in its first tax return, continues:

\* \* \* The absence of a clear indication in such return of an election to deduct as expenses intangible drilling and development costs shall be deemed to be an election to recover such costs through depletion \* \* \* and through depreciation \* \* \*. This election is binding for all subsequent years.

[1] Approved by H. Con. Res. 50, 79th Cong., 1st Sess. (July 21, 1945).

Respondent insists, and we agree, that there was no such "clear indication" in the 1944 return as the regulation envisages. But this is not to say that the election to capitalize can be spelled out under our interpretation of the regulation.

The confusion is due to the fortuitous result that a dry hole was the outcome of the only operations undertaken in 1944. It is hence impossible to conclude with any seriousness that petitioner's treatment could have the effect described by the regulation of an election to recover "such costs through depletion and through depreciation." The expenses were written off at once and left the intention to resort to depletion as much in the realm of speculation as though no expensable cost had been incurred in that year.

Looking at the regulation as a whole, we are led to conclude that, while it clearly envisages an election between expensing development costs and leaving them open for future years as a basis for recovery by means of depletion and depreciation, nowhere is there provision for an election between expensing and deduction as a loss. Under the peculiar facts, that was the only choice open to petitioner in 1944. If the election to expense is not clearly indicated, an intention to recover the costs through depletion will be presumed. But the regulations offer no help in deciphering what, if any, will be the effect of a failure to be precise as between expensing a dry hole and deducting it as an operating loss.

This is borne out by the only express provision for an election to deduct losses on dry wells. That option is open only after, and not as, an election to capitalize:

(iv) Option with respect to cost of nonproductive wells: If the operator has elected to capitalize intangible drilling and development costs, then an additional option is accorded with respect to intangible drilling and development costs incurred in drilling a nonproductive well. Such costs incurred in drilling a nonproductive well may be deducted by the taxpayer as an ordinary loss provided a proper election is made in the return for the first taxable year beginning after December 31, 1942, in which such a nonproductive well is completed. * * *

The 1944 situation was thus left for clarification in the following year when the necessary prerequisites to the contemplated election came into existence for the first time. In that year, as even respondent apparently concedes, petitioner made an unequivocal statement that it was deducting its intangible development costs as expense. We view this as sufficient.

In sum, we find that, as the regulation is constructed, it was not until 1945 that there could be an election by petitioner between expensing its drilling operations and setting them up as capital items for recovery through depletion. When that option became available

to it, it adequately noted its choice to charge the costs to expense. The deficiency is accordingly disapproved.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

BRUCE, *J.*, concurs in the result.

———

RICE, *J.*, concurring : I agree with the result reached in the majority opinion but would arrive there by a different path.

Under the regulation first quoted in the majority opinion, a taxpayer has an option to elect to expense intangible drilling and development costs, or to recover them through depletion and depreciation. If there is no clear indication in the return of the taxpayer that he elects to expense such costs, he is deemed to have elected to recover them through depletion and depreciation. The majority opinion says there was no such clear indication in the 1944 return. Once we agree on that proposition, the controversy is ended it seems to me. When a taxpayer capitalizes such costs, whether voluntarily or involuntarily, he recovers them through depletion and depreciation. The intention to recover costs through depletion and depreciation, in the absence of a clear indication in the return to expense them, is therefore synonymous with an intention to capitalize such costs.

In its 1944 return, petitioner included such costs (with a minor exception not material here) in the deductions taken in determining its net income. Petitioner's accountant, who prepared the return, testified that it was his intention to take the deduction as an expense and not as a capital item. He also testified that he was familiar with and relied on a letter of the Bureau of Internal Revenue dated January 25, 1944, reading in part as follows:

If a well drilled in 1944 is the first drilling done by lessee since December 31, 1942, his action on his 1944 income tax return with regard to this item will constitute his election to either charge such costs to depletable capital or deduct them as expense. Such an election is binding for all subsequent years.

The respondent argues that since the deduction taken by petitioner in his 1944 return was under the heading "Dry Holes and Worthless Leases" and amounted to the entire cost of the well (which included the cost of some unrecovered casing as well as the intangible drilling and development costs), such action is prima facie evidence of an intention to capitalize intangible drilling and development costs rather than to expense them I do not agree with this argument. Petitioner's 1944 return shows the amount in question was deducted in arriving at net income. This is, of course, not determinative because if it had elected to capitalize and had further elected to deduct all the

costs of the dry hole as an ordinary loss, the deduction would have appeared in the same place on the return. However, the petitioner's books show that it treated such costs as an expense and that, together with the return, is sufficient to show a valid election. *Commissioner* v. *Sklar Oil Corporation* (C. A. 5, 1943), 134 F. 2d 221. The regulations should not be construed so narrowly as to exclude evidence of petitioner's actual intent. If the respondent is doubtful as to the construction to be placed upon such a deduction in a return, the method employed by the taxpayer in accounting for such costs on his books should be examined and taken into account.

RAUM, *J.*, dissenting: The applicable regulations, quoted in the majority opinion, provide that the "absence of a clear indication" in the return of an election to deduct as expenses intangible drilling and development costs "shall be deemed" to be an election to recover such costs through depletion and depreciation, and that such election is binding for all subsequent years. It appears beyond reasonable dispute that the return herein did not contain a "clear indication" to deduct the expenses in question, with the consequence, explicitly set forth in the regulations, that such costs must be recovered through depletion and depreciation, and this means simply that they must be capitalized.

The result may not be avoided by stating the question, as is done in the majority opinion, in terms of "whether what petitioner did * * * constituted an irrevocable election not to expense its intangible drilling and development costs." The issue is not whether petitioner made an irrevocable election "not to expense" the costs in question. Rather the issue is, plainly stated in the regulations, whether there is a "clear indication" in petitioner's return to deduct such expenses; and in the absence of any such "clear indication," the regulations spell out the consequences which must follow.

Nor may the result be avoided by the theory advanced in the concurring opinion, which resorts to extrinsic evidence to determine whether petitioner made an election to expense the intangible drilling and development costs. The regulations unambiguously require that the election to expense be clearly indicated "in such [petitioner's] return." Neither the majority opinion nor the concurring opinion suggests that the Commissioner was without power to promulgate such regulations, and I know of no sound reason why they should be held invalid.

TURNER, *J.*, agrees with this dissent.